Patricia Lee KANE, Plaintiff—
Appellant,

v.

LEWIS AND CLARK COUNTY,
MONTANA; Russell Whitcomb;
Defendants—Appellees.

Patricia Lee Kane, Plaintiff—
Cross–Appellee,

v.

Russell Whitcomb, Defendant—
Cross–Appellant.

Nos. 03–35172, 03–35213.
D.C. No. CV–01–00004–CSO.

United States Court of Appeals,
Ninth Circuit.

Submitted May 7, 2004.*

Decided Sept. 14, 2004.

Palmer A. Hoovestal, Helena, MT, for Plaintiff–Appellant.

Gregory A. Jackson, Jackson Law Firm, P.C., Allen B. Chronister, Chronister,

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Moreen & Larson, P.C., Joseph Seifert, Keller, Reynolds, Drake, Johnson & Gillespie, Thomas E. Hattersley, III, David C. Dalthorp, Gough, Shanahan, Johnson & Waterman, James C. Cumming, Cumming Law Office, Helena, MT, Stephen C. Bullock, Steptoe & Johnson, Washington, DC, for Defendants–Appellees.

Before HUG, TASHIMA, and PAEZ, Circuit Judges.

## MEMORANDUM**

This case involves a suit brought by Patricia Kane pursuant to 42 U.S.C. § 1983 for unlawful arrest in violation of her constitutional rights. The suit was brought against Detective Russell Whitcomb, a police officer of the City of Helena, Lewis and Clark County, and others.[1]

Although Kane characterizes this as an interlocutory appeal of the district court's grant of summary judgment on September 25, 2002, it is in actuality an appeal from the final judgment entered on February 4, 2003. The notice of appeal was timely filed on February 13, 2003. The issues raised in this appeal are from the final judgment concerning the rulings of Magistrate Judge Ostby in granting the summary judgment against Kane.[2]

The Police Department of the City of Helena was contacted concerning the possible theft of property from Bryan Hilger by Patricia Lee Kane. Detective Whitcomb was assigned to investigate, which he did for about a month. He concluded that there was probable cause to arrest Kane for theft of Hilger's property. He prepared an affidavit for an arrest warrant and took it to Lewis and Clark County Attorney Mike McGrath who agreed that his affidavit justified a warrant for Kane's arrest. McGrath prepared a complaint for Whitcomb's signature to be taken along with the affidavit to Justice of the Peace Wallace Jewell. The affidavit was reviewed by Judge Jewell and he issued a warrant for Kane's arrest.

Whitcomb's affidavit revealed that Hilger hired Kane as a housekeeper about 10 years before. A couple of years later she stopped working as an employee, but continued being a friend and assisted Hilger with paying his bills and keeping track of his checkbook. Kane became a signatory on Hilger's bank account and obtained a power of attorney for Hilger.

Whitcomb met with Mel Schuldt and Tim Crawford, who were close friends of Hilger. They informed Whitcomb that Hilger was 85 years old and in ill health. They stated that it was their belief that Kane was using her position of trust to take funds and other assets from Hilger in violation of the law. Schuldt had taken over assisting with Hilger's finances and accounts when Kane left. He found numerous checks drawn from Hilger's account that were not authorized by Hilger and not spent for the purposes indicated and ended up in Kane's account. This amounted to about $27,900. Whitcomb examined some of those checks. Schuldt and

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The suit initially also named as defendants the City of Helena, the Helena Police Department and two individuals, Melvin Schuldt and Timothy Crawford. These defendants were dismissed by the court and the order of dismissal has not been appealed.

2. This case was assigned, with the consent of the parties, to Magistrate Judge Ostby, pursuant to 28 U.S.C. § 636(c)(1).

Crawford also told Whitcomb that Hilger had told them of a considerable amount of silver that was missing.

Whitcomb met with Cathy Campbell, the current owner of Hilger's ranch house, and a friend of Hilger who told him she believed that Kane had "misappropriated a Chevy Luv pickup." Whitcomb's checking revealed that such a vehicle was recently titled to Kane and a Jim Wise. Campbell told Whitcomb that it had been very apparent to her that Kane had been manipulating Hilger for many years. She believed that there were clear cases of Kane either "conning" Hilger into giving her money or property or her gaining control of it by other means such as a power of attorney. Campbell provided a video tape of a TV interview with Kane in which she is seen telling the reporter how naive Hilger and his family were. Campbell also told Whitcomb that Kane had personally told her that Hilger "was so naive that he deserved to be ripped off." She also told Whitcomb that in 1989 Kane had taken Hilger to First Bank and they had removed all of his CD's. Campbell stated she was convinced that Kane had them cashed in and took the money.

Whitcomb believed that his investigation, as set forth in his affidavit, was sufficient to establish probable cause for Kane's arrest for theft. When he took it to the County Attorney, McGrath, the attorney agreed and prepared a complaint for him to sign. Whitcomb's belief was confirmed by the judge, who issued the warrant for Kane's arrest for the crime of theft.

The crime of theft is defined in Title 45 of the Montana Code § 45-6-301, which contains seven subsections detailing what can constitute the crime of theft. Two of the subsections are pertinent here.

45-6-301 Theft. (1) A person commits the offense of theft when the person purposely or knowingly obtains or exerts unauthorized control over property of the owner and;

(a) has the purpose of depriving the owner of property;

(b) purposely or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or

(c) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property;

(2) A person commits the offense of theft when the person purposely or knowingly obtains by threat or deception control over property of the owner and;

(a) has the purpose of depriving the owner of the property;

(b) purposely or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or

(c) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property.

The complaint drafted by County Attorney McGrath particularly singled out subsection (1)(c), as did the warrant for arrest. However, Whitcomb's affidavit did not specify the particular subsections of the crime; this was the specification of the county attorney and the judge issuing the warrant.

*Claim Against Detective Whitcomb*

■ The claim against Whitcomb is not that he had unlawfully arrested Kane. The claim is that he "caused" her unlawful arrest. His only actions were conducting an investigation, preparing a detailed affidavit, presenting it to the County Attorney who believed there was probable cause for

an arrest, presenting it to a judge who issued an arrest warrant, and then forwarding the warrant to California for its execution.

In considering a defense of qualified immunity, the Supreme Court has instructed that we first consider whether a constitutional right would have been violated on the facts alleged and, if so, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Kane alleges that the facts related in Whitcomb's affidavit did not give probable cause to lawfully arrest Kane because it was clearly established that taking funds from a joint account could not constitute theft. She based this on a Montana case, *State v. Haack*, 220 Mont. 141, 713 P.2d 1001, 1003 (1986). However, there is doubt that *Haack* remained good authority after the legislature passed Montana Code Sec. 72–6–211 in 1989.

That statute was enacted three years after *Haack*, and provided that signatories to a multiple party account own the account in proportion to their contributions, absent convincing evidence of a different intent. Since Hilger had contributed all of the funds to the account and under the statute "owned" the funds in the account, it was unclear in light of this statute whether *Haack* even applied to these circumstances. Furthermore, four years after *Haack* the Montana Supreme Court decided *State v. Curtis*, 241 Mont. 288, 787 P.2d 306 (1990), which upheld the conviction of a nurse who had taken funds from a joint checking account of an elderly person she was caring for, Mrs. Bullock. The court distinguished *Haack* on the basis that there was sufficient evidence that Curtis had deceived Bullock into setting up the joint account, whereas in *Haack* there was no such evidence.

Analyzing the evidence in this case against Whitcomb, as required by *Saucier*, we hold that there was sufficient evidence to establish probable cause that the crime of theft had been committed by Kane. There was evidence that Kane had been "ripping off" Hilger for years from which a jury could reasonably find that she had deceived Hilger into establishing the joint account, from which she later took $27,900 for her own use. Whitcomb's affidavit revealed that there was probable cause to believe she had taken other property, silver, CD's and a Chevy pickup truck.

The County Attorney relied on § 45–6–301(1)(c) as the applicable theft provision in the complaint and the information. Although the state district court dismissed the information, which was upheld by the Montana Supreme Court, this does not affect the issue of whether Whitcomb's affidavit stated probable cause for Kane's arrest. Whitcomb's affidavit set forth facts establishing probable cause that the crime of theft had been committed regardless of whether she was ultimately convicted. Thus, this case fails *Saucier*'s first test.

As an alternate ground we hold that the constitutional right was not clearly established. The Supreme Court has emphasized that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition". "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

Whitcomb completed his investigation and prepared an affidavit reasonably believing that there was probable cause that Kane had committed the crime of theft. He confirmed his belief by taking the affidavit to the County Attorney who agreed.

It was only after that, that he took his affidavit together with the complaint to the judge to seek a warrant for Kane's arrest. It would be clear to a reasonable officer conducting the investigation with the precautions taken that there was probable cause to arrest Kane for theft.

### Detective Whitcomb's Cross–Appeal

The district court rendered its summary judgment for Whitcomb and against Kane assuming for the purpose of summary judgment that Kane could establish that a constitutional right was violated, but awarding the summary judgment to Whitcomb on the basis that it was reasonable for Whitcomb to believe that a crime had been committed. Whitcomb's cross appeal seeks to establish that there was no constitutional violation because there was probable cause for the arrest. As discussed above, we agree with Whitcomb that there was probable cause for the arrest and no Constitutional violation.

### Claim Against Lewis and Clark County

Kane's argument against the County is based entirely on County Attorney McGrath's assistance to Whitcomb in preparing a complaint to be used in obtaining an arrest warrant. At the hearing in the district court Kane's counsel stated that he is aware of no County policy under which McGrath acted. The court added that the record revealed none. To state a claim against a county, a plaintiff must allege and establish that a county policy, practice, or custom caused the violation of the plaintiff's constitutional right. *Pierce v. Multnomah County,* 76 F.3d 1032, 1039 (9th Cir.1996). There is no vicarious or *respondent superior* liability under § 1983. *Los Angeles Police Protective League v. Gates,* 907 F.2d 879, 889 (9th Cir.1990). There is also no showing that McGrath, with the single act of preparing the complaint for

Whitcomb to sign, even if acting as a policy maker for the county, acted with deliberate indifference as required by *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

The judgment of the district court is **AFFIRMED.**